UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

PAUL O'HARA,

                                                  Plaintiff,

                    -against-                              11 CV 3990 (TLM)

P.O. MICHAEL MCEVOY [sic], P.O. MICHAEL
MALONE

                                         Defendant.


------------------------------------------------------------------------ x




**DEFENDANT MCAVOY'S POST-TRIAL MOTION TO DISMISS ON THE GROUNDS
OF QUALIFIED IMMUNITY OR, ALTERNATIVELY, SEEKING A NEW TRIAL
PURSUANT TO RULE 59.**




Dated: New York, New York
         July 8, 2013

                                   MICHAEL A. CARDOZO
                                   Corporation Counsel of the
                                   City of New York
                                   Attorney for Defendants
                                   100 Church Street, Room 3-217
                                   New York, New York 10007
                                   (212) 356-2411
                                   (212) 788-9776 – Fax
                                   Andrew Wenzel
                                   Assistant Corporation Counsel

## **TABLE OF CONTENTS**

<u>**Page**</u>

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

REVIEW OF FACTS……………………………………………………………………..3

ARGUMENT .......................................................................................................................... 11

    POINT I

        DEFENDANT MCAVOY IS ENTITLED TO QUALIFIED IMMUNITY. ...........................................................11

        A.    Qualified Immunity Standard ............................................................12

        B.    Application of two-part qualified immunity test

            1.    Officer McAvoy's conduct did not violate a constitutional right .................................................13

            2.    It was not clearly established that McAvoy's conduct was unconstitutional ..................................14

            3.    Justice mandates that Officer McAvoy be granted qualified immunity.......................................19

    POINT II

        IF THE COURT DECLINES TO GRANT QUALIFIED IMMUNITY, THE VERDICT SHOULD BE SET ASIDE AND A NEW TRIAL ORDERED...........................................................21

        A.    Letters produced by former plaintiff Amanda O'Hara should have been admitted into evidence ...............................22

        B.    Plaintiff's counsel's remarks during his rebuttal summation were improper ...................................................24

CONCLUSION........................................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

Ashcroft v. Al-Kidd
   131 S.Ct. 2074, (2011) ......................................................................................................12

Colon v. City of New York,
   60 N.Y.2d 78 (1983) ...........................................................................................................5

Crowell v. Kirkpatrick,
   400 Fed. Appx. 592 (2d. Cir. 2010) .........................................................11, 12, 13, 14, 16, 17

Dawson v. Snow,
   356 Fed. Appx. 526 (2d Cir. 2009) ....................................................................................5

DiStiso v. Cook,
   691 F.3d 226, (2d Cir. 2012).............................................................................................20

Gilliard v. City of New York,
   10 CV 5187, (NGG), 2013 U.S. Dist. LEXIS 18180 (E.D.N.Y. Feb. 7, 2013) .......................13

Gomez v. City of New York,
   05 Civ. 2147 (GBD)(JCF), 2008 U.S. Dist. LEXIS 41455 (S.D.N.Y. May 28, 2008)............13

Graham v. Connor,
   490 U.S. 386, (1989) .............................................................................................12, 15, 16

Hunter v. Bryant,
   502 U.S. 224 (1991) ........................................................................................................21

Husbands ex rel. Forde v. City of New York,
   335 Fed. Appx. 124, (2d Cir. 2009) ..................................................................................18

Lennon v. Miller,
   66 F.3d. 416, (2d Cir. 1995).............................................................................................21

Malley v. Briggs,
   475 U.S. 335 (1986).........................................................................................................21

Moore v. Vega,
   371 F.3d. 110, (2d Cir 2004).............................................................................................12

Oliveira v. Mayer
   23 F.3d 642 (2d Cir. 19944).............................................................................................13

Pearson v. Callahan,
   555 U.S. 223, (2009) ......................................................................................................12

**Page**

Pinter v. City of New York,
    448 Fed. Appx. 99 (2d Cir. 2011) .........................................................................21

Rasmussen v. City of New York,
    766 F.Supp.2d 399, (E.D.N.Y February 2, 2011) .....................................................4

Rivera v. Federlin,
    08 Civ. 7293 (PAC)(KNF), 2011 U.S. Dist. LEXIS 138553 (S.D.N.Y. Dec. 2, 2011)...........18

Saucier v. Katz,
    533 U.S. 194, (2001) ...................................................................................12, 20

Taravella v. Town of Wolcott,
    599 F.3d. 129 (2d Cir. 2010) .............................................................................12

Tracy v. Freshwater,
    623 F.3d. 90, 97 (2d Cir. 2010) ...............................................................13, 15, 16

U.S. ex rel. Thompson v. Village of Spring Valley,
    05 Civ. 2005 (LAP), 2006 U.S. Dist. LEXIS 46356, (S.D.N.Y. July 10, 2006) .....................18

Walczyk v. Rio,
    496 F.3d 139, (2d. Cir. 2007)..........................................................................12, 18

Williams v. City of New York,
    05 Civ. 100230, (SAS), 2007 U.S. Dist. LEXIS 55654 (S.D.N.Y. July 26, 2007)..................18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

PAUL O'HARA,

                                        Plaintiff,

                 -against-

P.O. MICHAEL MCEVOY [sic], P.O. MICHAEL
MALONE

                                Defendants.

------------------------------------------------------------------------ x

**DEFENDANT MCAVOY'S
POST-TRIAL MOTION TO
DISMISS ON THE
GROUNDS OF QUALIFIED
IMMUNITY OR,
ALTERNATIVELY,
SEEKING A NEW TRIAL
PURSUANT TO RULE 59.**

11 CV 3990 (TLM)

## PRELIMINARY STATEMENT

        Plaintiff Paul O'Hara brought this action pursuant to 42 U.S.C. § 1983 and New York

State law alleging deprivation of his civil rights. Specifically, plaintiff alleged that his rights

were violated on April 7, 2010, when Police Officer Michael McAvoy falsely arrested him and

subjected him to excessive force, as well as assault and battery. Plaintiff also brought a claim

pursuant to 42 U.S.C. § 1983 against Police Officer Michael Malone for failure to intervene.

        A trial on this action commenced before the Honorable Tucker L. Melancon, United

States District Judge, on June 25, 2013. After having asserted the defense of qualified immunity

in their answer to the complaint, defendants again asserted the defense of qualified immunity at

the close of plaintiff's case and argued the motion while the jury was deliberating.[1] The jury

rendered a verdict on June 28, 2013, finding Police Officer McAvoy liable for using excessive

force and committing a battery. The jury awarded compensatory damages to plaintiff in the

amount $10,000 for his federal excessive force claim and $40,000 for his New York state law

battery claim. The jury found that plaintiff had not been falsely arrested or subjected to an

---

[1] The parties agreed to reserve the motion until the jury was deliberating.

assault by defendant McAvoy.  Additionally, the jury found that defendant Malone had not failed to intervene.

After rendering the verdict, the jury was asked to answer three special interrogatories to assist the Court in determining the defense of qualified immunity. Only the third interrogatory pertained to defendant McAvoy's use of force.  Specifically, the jury was asked the following question, "Do you find by a preponderance of the evidence that plaintiff was struggling with defendant McAvoy when defendant McAvoy punched plaintiff?"

This third special interrogatory was drafted by the Court after plaintiff's counsel consented, and then withdrew consent, to two special interrogatories proposed by defense counsel.  (Trial Transcript, P. 15, ll. 15-20).  The Court originally proposed the interrogatory to read, "Do you find by a preponderance of the evidence that plaintiff was struggling with defendant McAvoy when defendant McAvoy was putting handcuffs or attempting to put handcuffs on plaintiff?"  (P. 372, ll. 17-21).  However, at the insistence of plaintiff's counsel, the ending of the interrogatory was changed to read "…when defendant McAvoy punched plaintiff." In suggesting the alteration to the interrogatory, which the Court adopted and defense counsel agreed to, plaintiff's counsel stated on the record the following:  "If we just finish the sentence off 'when defendant McAvoy punched plaintiff' I think it makes perfect sense.  So if there was a struggle when he punched plaintiff, I think that would definitely help the Court decide qualified immunity."  (P. 377, ll. 8-12)

The jury answered the aforementioned special interrogatory "Yes."   The jury then declined to award plaintiff any punitive damages.

After the verdict, defendant McAvoy once again asserted the defense of qualified immunity.  The Court instructed defendants to write a memoranda of law about the issue, and

any other pertinent issues, citing specific facts in the record.  Defendant McAvoy now submits this memorandum of law and asks the Court to rule as a matter of law that he is entitled to the defense of qualified immunity and to dismiss, with prejudice, the claims of excessive force and battery.   Additionally, should the court decline to grant qualified immunity, defendant McAvoy now moves pursuant to Rule 59 of the Federal Rules of Civil Procedure for a new trial or any other relief that the Court sees fit.

<u>THE FACTS AS THEY STAND AFTER THE JURY'S VERDICT</u>

Based upon the testimony elicited at trial and the jury's finding of facts as derived from the testimony, there is no question that Officer McAvoy is entitled to the defense of qualified immunity.

<u>Plaintiff's approach to Officer McAvoy</u>

The following facts concerning plaintiff's approach to Officer McAvoy are derived from plaintiff's testimony and the jury's findings.

When Officer Ortiz arrived on the scene, she engaged in a conversation with Amanda O'Hara.  (P. 285, l. 22 through P. 286, l. 10).  During this conversation, Officer Ortiz asked Ms. O'Hara if anything had been taken and how the car was broken into.  (P. 287, ll. 17-24).  Ms. O'Hara did not have a good response for these questions.  (P. 287, ll. 17-24).   Police Officer Ortiz then asked, in sum and substance, "What do you expect us to do about it?"  (P. 287, ll.  17-24).  At that point, after being asked questions by Officer Ortiz, Amanda O'Hara "got upset and began cursing towards Ortiz."  (P. 287, ll. 13-16).  Amanda Ortiz said to Officer Ortiz, "I want you to stop being a bitch and do your job."  (P. 287, ll. 17-24).  Officer Ortiz did not use any profanity towards Amanda O'Hara.  (P. 507, ll. 16-24).

- 3 -

While Officer Ortiz and Amanda O'Hara were having this interaction, defendant McAvoy arrived at the location.  (P. 288, l. 23 through P.289, l.24.)  Almost immediately, Officer McAvoy and Amanda O'Hara began arguing.  (P. 289, l. 16 through P. 291, l. 11).  Officer McAvoy and Amanda O'Hara were two inches from each other's face when plaintiff approached them.  (P. 293, ll. 10-14).[2]  During Plaintiff's approach, Officer McAvoy was facing Amanda O'Hara the entire time, and plaintiff approached them from a diagonal.  (P. 295, ll. 9-11; P. 511, ll. 18-21).  Plaintiff approached from a distance of between five or ten feet.  (P. 290, ll. 5-6). When plaintiff approached Officer McAvoy, he was holding his cell phone in his hand, and had his hand clenched in a fist.  (P. 508, ll. 4 - 25).  Plaintiff admitted that it could have appeared that his hand looked like a fist, indeed he admitted his hand was clenched in a fist, when he approached Officer McAvoy.  (P. 508, ll.  11-25).

During this time period, Ms. O'Hara was yelling and using profanity towards McAvoy.  (P. 509,  l. 25 through P. 510, l. 11).  When plaintiff arrived at the location where Amanda O'Hara and Police Officer McAvoy were standing, plaintiff realized that he was not going to be able to calm his mother down, so he decided to try to speak with Officer McAvoy.  (P. 293, ll. 11-15).  At this point plaintiff was "a foot, if that" from Officer McAvoy.  (P. 293, ll. 19-20).

---

[2] Plaintiff testified that he only approached officer McAvoy and Amanda O'Hara because he was told to do so by Officer Ip.  (P. 291, ll. 7-11).  Whether this is true is irrelevant because Officer McAvoy clearly would have had no idea about any supposed conversation between Officer Ip and plaintiff, nor did plaintiff present any evidence to show such knowledge.  Even if plaintiff is to be believed, Officer McAvoy was engaged with Amanda O'Hara when Officer Ip supposedly told plaintiff, who was ten feet away, to approach.  (PP. 291-294).  The only relevant inquiry is what Officer McAvoy reasonably perceived from his perspective.  See Tracy v. Freshwater, 623 F.3d. 90, 97 (2d Cir. 2010).  What he perceived was plaintiff coming to within one foot of him with a clenched fist.  Furthermore, plaintiff's subjective motive for interfering with Officer McAvoy is irrelevant.  See Rasmussen v. City of New York, 766 F.Supp. 2d 399, 406 (E.D.N.Y February 2, 2011).  Tracy at 97.  Plaintiff's claim that Officer Ip told him to approach Ms. O'Hara and Officer McAvoy may have provided plaintiff with a valid defense at a criminal trial for obstructing governmental administration, but it has nothing to do with whether there was probable cause for his arrest or whether reasonable force was used.

Based upon the actions of plaintiff, Officer McAvoy had probable cause to place plaintiff under arrest and was justified in doing so.  (Jury verdict, denying plaintiff's false arrest claim).[3]

<u>The Physical interaction between Plaintiff and Officer McAvoy</u>

The physical interaction between plaintiff and Officer McAvoy that ensued following the approach by plaintiff was disputed between the parties at trial, but was resolved by the jury's verdict and answer to special interrogatory number three.[4]  In order to properly assess the jury's resolution of these contested facts, it is helpful to first recount both parties testimony concerning the physical interaction.

a.  *Plaintiff's version*

With respect to the physical interaction, plaintiff gave the following testimony:

As he approached Police Officer McAvoy, Officer McAvoy threatened plaintiff by stating "are you stepping to me son?"  (P. 293, l. 24 through P. 294, l. 3).  Plaintiff said nothing in return and then Officer McAvoy punched plaintiff in the left eye.  (P. 295, ll. 14 - 25).  This punch occurred as both plaintiff and Officer McAvoy were standing in the street and before they were engaged in any physical altercation whatsoever.  (P. 295, ll. 14 – 25; P. 504, l. 22 through

---

[3] The jury found that plaintiff did not "approach defendant McAvoy at a fast pace with clenched fists and come face-to-face with him at a very close distance." (Answer to Special Interrogatory number two).   However, this finding is completely irrelevant to the questions of whether plaintiff was falsely arrested or what force Officer McAvoy used. Plaintiff's own version of events, cited above, demonstrated that there was probable cause for his arrest, a fact that that the jury clearly recognized by finding no false arrest.  For the purposes of qualified immunity, it does not matter whether plaintiff actually threatened Officer McAvoy, all that matters is whether, from Officer McAvoy's perspective, he reasonably believe plaintiff's actions to be threatening.  <u>Tracy v. Freshwater</u> 623 F.3d. 90, 97 (2d Cir. 2010) <u>See also</u> <u>Dawson v. Snow</u>, 356 Fed. Appx. 526, 528-529 (2d Cir. 2009) ("probable cause can be based on mistaken information, as long as the police acted reasonably and in good faith in relying on the information."); <u>see also</u> <u>Colon v. City of New York</u>, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 468 N.Y.S.2d 453 (1983*).* Plaintiff's own testimony confirms that even if McAvoy was mistaken about plaintiff's intentions, his mistake was reasonable.  (P. 508, ll. 11-25).  Likewise, special interrogatory number 1 is completely irrelevant.  Whether plaintiff's chest actually made contact with officer McAvoy is irrelevant considering the fact that plaintiff's own testimony was that he approached Officer McAvoy with a clenched fist and got to within one foot, if that, of Officer McAvoy's face, while Officer McAvoy was arguing with Amanda O'Hara.

[4] It is undisputed that after plaintiff was placed in handcuffs he was not punched.  (Page 300, lines 10-13; Page 428, lines 1-3)

P. 505, l. 2).  This is the only time plaintiff was struck in the left eye.[5]  After plaintiff was punched one time in the left eye, he fell to the ground (P. 296, l. 14 through P. 297, l. 1), rolled over onto his stomach, put his hands behind his head, and expected officer McAvoy to arrest him. (P. 298, ll. 12-19).  On cross-examination plaintiff further described that he thought he was going to be arrested so he "offered himself up" and went limp.  (P. 512, l. 18 through P. 513, l. 14) (P. 518, ll. 5-8).   At this point, when plaintiff was lying face down on the ground with his hands behind his head, Officer McAvoy got on top of plaintiff and proceeded to punch him four times in the back of the head.  (P, 298, ll. 12-22).   On cross-examination plaintiff stated that he rolled into a "fetal position, trying to protect himself."  (P. 513, ll. 5-9).  After plaintiff was being punched in the back of the head while on the ground, he tried to move his arms to defend himself.  (P. 299, ll. 2-14).   On cross-examination plaintiff stated that it was not until after he was punched four times in the back of the head that he started moving around on the ground (P. 518, ll. 1-3) and "tried to resist." (P. 561, l. 15).  While plaintiff was trying to protect himself, he was "on all fours," indicating he was on his elbows and knees.  (P. 566, ll. 9-15).

### b.  _Police Office McAvoy, Ortiz, and Malone's version_

With respect to the physical interaction, Officer McAvoy gave the following testimony:

Plaintiff approached him as he was engaged in a conversation with Ms. O'Hara.  (PP. 148-149).  Plaintiff was in Officer McAvoy's face when officer McAvoy pushed plaintiff up against a car.  (P. 149, ll. 1-5).  Officer McAvoy never stated to plaintiff "are you stepping to me son" and never punched plaintiff while they were standing up.[6]  (P.89, ll. 24, though P.90, l.5).

---

[5] Plaintiff said that when he was on the ground he was hit in the "back of the head, the side of the head" and the arms.  (P. 299, ll. 4-7).  At no other point in his testimony, other than when he alleged McAvoy first punched him while they were standing in the street, did plaintiff indicate he was ever struck in the left eye.

[6] This testimony was corroborated by the testimony of Officers Malone and Ortiz, who were called on plaintiff's case, as was Officer McAvoy.  (P. 188, ll. 9; P. 270, ll. 2).

He and plaintiff fell to the ground, at which point Officer McAvoy tried to grab plaintiff's right hand and put it behind his back.  (P. 91, l. 5; P. 149, ll. 17-22).  Plaintiff was moving around while he was on the ground (P. 91, ll. 2-7) and flailing his arms (P. 149, ll. 23.)  It felt like plaintiff was trying to get up.  (P. 150, ll. 4-11; P.91, ll. 5-6).  Officer McAvoy had very little time to react so he threw one punch while plaintiff was moving around on the ground.  (P. 150, ll. 12-15). At the point McAvoy threw the punch, plaintiff was on the side of him, plaintiff was "looking away," and moving around.  (P. 150, ll. 12-15).  It was a split-second decision.  (P. 91, l. 5).  Officer McAvoy did not know where the punch landed.  (P. 90, ll. 12-18).  After the punch was thrown, Officer McAvoy was able to grab plaintiff's hand, put it behind his back, take his other hand and put it behind his back, and sit him up.  (P. 150, ll. 16-20.)  After the punch was thrown, everything was over, and the struggle stopped.  (P. 150, ll. 16-20.)

c.   <em>The Jury's factual findings regarding the use of force</em>

The jury's verdict, answer to special interrogatories, and decision not to award punitive damages very clearly demonstrated that they believed Officer McAvoy's – as well as Officer Malone and Ortiz's - version of events concerning the force used; the jury's findings also squarely reject plaintiff's version of events.

The only special interrogatory that related to the use of force that the jury was asked to answer was as follows:  "Do you find by a preponderance of the evidence that plaintiff was <u>struggling</u> with defendant McAvoy when defendant McAvoy punched plaintiff?" (emphasis added).  The jury answered "Yes."  This answer unequivocally demonstrates that the jury found Officer McAvoy's testimony regarding the force used as credible and plaintiff's version incredible.[7]

---

[7] The jury answered the interrogatory in a matter of minutes and had no notes about any of the interrogatories.

To struggle means to "make forceful or violent efforts to get free of restraint or constriction."[8]  Plaintiff testified that the punch to his left eye occurred before any physical contact whatsoever with officer McAvoy.  The jury, by their answer to the special interrogatory finding that plaintiff was struggling with Officer McAvoy when he was punched, concluded that plaintiff was being untruthful when said he was punched while standing, prior to any physical contact.[9]  Furthermore, regarding the alleged additional punches to the back of his head, plaintiff's testimony was that he was on his stomach, limp, and offering himself up with his hands behind his head, when he was punched four times.  Plaintiff's description of his conduct at this time in no way described a struggle.[10]  Again, the jury, by their answer to the special interrogatory, found that plaintiff was not truthful when he was describing his conduct during these alleged punches.[11]

Conversely, the jury's affirmative answer to this special interrogatory is completely consistent with Officer McAvoy's testimony that he punched plaintiff one time, after he was unable to get plaintiff's hands because plaintiff was moving his arms and body, attempting to get

---

[8] http://oxforddictionaries.com/us/definition/american_english/struggle.

[9] This is extremely significant because, according to plaintiff, it was this punch that caused the swelling and bruise to his left eye, which was his only significant injury.

[10] At one point in plaintiff's testimony, plaintiff was asked "Now, what happened after McAvoy punched you in the eye and you went to the ground?"  He answered, "After I put my hands behind my head and rolled over onto my stomach, expecting me to arrest me, he just got on top of me and continued to punch me in the back of the head.  And after that he placed me under arrest."  (P. 298, ll. 12-17).  Plaintiff clearly indicated, at least in this part of his testimony, that all of the punches were over before he struggled in any way with Officer McAvoy.  This testimony was flatly rejected by the jury.

[11] In plaintiff counsel's opening statement he stated, "The very next thing the officer does, he goes, are you stepping up to me, son?  And Paul literally did not have a chance to even answer the question.  This officer punched him in the face."  Plaintiff's counsel continued, "After he punched him, Paul went down to the ground.  And instinctively, just trying to show the officer, I'm surrendering, please, officer, don't do it, he puts his hands over his head…Just puts his hands over the head and just tries to assumed a position of complete surrender and to communicate in no uncertain terms he's not a threat to this officer, he's not fighting, please don't do anything."  (Page 46).  While these statements in counsel's opening are not evidence, it shows what plaintiff's counsel, who was speaking for his client, thought the evidence would show.  The jury flatly rejected this version of events when they found that plaintiff was struggling with Officer McAvoy when he was punched.

free of restraint. In fact, Officer McAvoy's own testimony was that "after the punch was thrown, everything was over. The struggle stopped." (emphasis added) (P. 150, l. 20). He actually described the interaction as a struggle. The only way to interpret the jury's answer to special interrogatory number three is that they found Officer McAvoy's version of the punch to be in fact what happened.

In addition to the aforementioned special interrogatory, the jury's finding that Officer McAvoy did not assault plaintiff further demonstrates that the jury did not credit plaintiff's version about his conduct when he was punched. The jury charge regarding assault instructed the jury as follows: "A finding of assault would require that police officer McAvoy intentionally caused plaintiff to become concerned that the defendant was about to cause a harmful or offensive bodily contact to him." (Jury Instructions, P. 14). Therefore, it is obvious that plaintiff was not believed when he repeatedly told the jury that officer McAvoy, while one foot away from plaintiff, threatened him by stating "are you stepping to me son" and then punched plaintiff in the face. Additionally, the jury obviously did not believe plaintiff when he said he was laying on the ground and knew that he was being punched multiple times in the back of the head.[12] Furthermore, plaintiff claimed that he was beaten for "thirty seconds to a minute. But it felt like

---

[12] On numerous occasions at trial plaintiff gave testimony indicating that he knew he was being punched and that he was concerned about the contact. For example, plaintiff testified that when he was on his back he counted that he was punched four times and that "from there I stopped counting. I just couldn't take it anymore." (P. 298, l. 23). Additionally, when asked what it felt like to be beaten on the back of the head, plaintiff replied, "It just hurt a lot. It was bad. It was really painful. I couldn't even understand why he was doing this to me." (P. 298, l. 25 through P. 299, l. 1). This testimony demonstrates that plaintiff claimed he recalled thinking about what was happening, as he was allegedly being beaten. This is the essence of assault. The jury clearly did not believe this testimony. Plaintiff continued, stating that after he was beaten in the back of the head, he tried to move his arms to stop McAvoy from punching him in the back of the head. (P. 299, ll. 11-12). Again, this answer demonstrates plaintiff's attempt to show that he was well aware of, and concerned about, the alleged offensive contact from Officer McAvoy and actually had the ability to physically react to the impending offensive contact. The jury rejected this testimony. The fact that the jury found no assault shows that they thought he this prolonged beating simply did not happen.

a long time" and that it was definitely more than a couple seconds.[13]  (P. 299, ll. 19-23). Clearly, if that statement was believed by the jury, they would have found that plaintiff knew of, and was concerned about, impending harmful contact and therefore found an assault.

Instead, by not finding an assault, the jury once again credited Officer McAvoy's testimony, where he stated the following:

> "As soon as he was on the ground, it was a immediate, up like almost like a get up response by him, whether it be to run away or whether it be to fight me.  At that point, I threw a punch.  I was on the side of him.  He was looking away.  He was moving around.  I didn't know where it landed, but as soon as I threw the punch, whatever he was doing, he stopped."  (emphasis added) (P. 150, l.13)

Officer McAvoy's testimony demonstrated that plaintiff would have never seen the punch coming, and that the contact happened very quickly.  Therefore, plaintiff would not have been placed in fear of harmful or offensive contact, or had time to react.   This jury's verdict for McAvoy on assault demonstrates that the jury found the punch to be very quick and at an angle where plaintiff could not see it coming – just as McAvoy described it and vastly different from plaintiff's version of the alleged "beating."[14]

Furthermore, the jury's verdict that Officer Malone was not liable for failing to intervene demonstrated, once again, that the jury did not believe plaintiff's version of events regarding the physical altercation.  Plaintiff testified that Officer Malone was in front of him while he was on the ground being repeatedly punched by officer McAvoy, and that Officer Malone did nothing to

---

[13] Additionally, plaintiff admitted during cross-examination that he had previously stated he was beaten for three to five minutes. (P. 518, ll. 9-11).

[14] The jury did find Police Officer McAvoy liable for state law battery.  In the jury charge on justification for a battery, the Court stated: "If you find that defendant reasonably believed that plaintiff was resisting arrest and that defendant used no more force than defendant reasonably believed to be necessary, you will find that defendant committed no battery.  If you find that defendant did not reasonably believe that plaintiff was resisting arrest, or you find that defendant did not reasonably believe the force used was necessary under the circumstances, you will find that defendant committed a battery."  The jury has answered that plaintiff was struggling when punched, so they clearly believed  Officer McAvoy thought plaintiff was resisting arrest.  Indeed, plaintiff even testified that he "tried to resist."  (P. 561, l. 18)  Therefore, the jury must have second guessed the force used by Officer McAvoy during the course of the struggle and, in their opinion, thought it unnecessary.   That is why they found a battery.

stop it.  (P. 299, l. 25 through P. 300, l. 9).   In finding that Officer Malone was not liable for failing to intervene, the jury again demonstrated that they found plaintiff's version of a prolonged, unprovoked beating not credible.  Clearly the jury felt that that plaintiff was punched during the course of a struggle, and because of the quickness of the incident, there was not time for anyone to intervene.

Finally, the jury's decision not to award punitive damages is just one more piece of evidence, indeed very strong evidence, that the jury felt plaintiff was lying about the force used against him.  The jury was instructed to award punitive damages if Officer McAvoy acted maliciously or wantonly in using excessive force.  Plaintiff's version of events certainly described malicious and wanton behavior by Officer McAvoy – in fact, if plaintiff's version was to believed, Officer McAvoy's behavior would have been criminal.  Plaintiff testified time and time again that Officer McAvoy punched him in the eye for no reason, before any other physical contact, and then got on top of plaintiff and repeatedly punched him in the back of the head while plaintiff was lying limp on the ground and offering himself up - again for no reason.  If the jury believed that version of events, there would have undoubtedly been a punitive damages award.[15]  The fact that the jury took approximately five minutes to decide that punitive damages were not warranted speaks volumes.

## I.     DEFENDANT MCAVOY IS ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY

In light of the aforementioned jury findings and testimony, Police Officer Michael McAvoy is entitled to the defense of qualified immunity as a matter of law.

---

[15] Plaintiff's counsel began his summation by stating, "This case to me comes down to one central issue.  Somebody in this courtroom committed perjury.  One side or the other committed perjury.  These are – this is a case – there are cases where you have, you know, there could be one story, another, maybe a third story.  Here, the stories are so far apart as what actually happened, what took place that night, that somebody is not telling the truth.  And it's going to be up to you as the jury, ultimately.  That's what this case comes down to.  Somebody committed perjury."  (P.693)  Clearly, the jury determined that plaintiff had committed perjury.

1. *Qualified Immunity Standard*

Qualified immunity is evaluated on the basis of two possible tests, and is to be granted if either test is met. Crowell v. Kirkpatrick, 400 Fed. Appx. 592, 594 (2d Cir. 2010).  As an initial matter, to either test, the court must inquire whether the facts show the officer's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201, (2001); Crowell v. Kirkpatrick, 400 Fed. Appx. 592, (2d Cir. 2010); Taravella v. Town of Wolcott, 599 F.3d. 129, 133 (2d Cir. 2010). Second, assuming the court finds that the facts do establish a violation of a constitutional right, it must then ask whether the right that was violated was "clearly established." Id. The Supreme Court in Saucier emphasized that this second inquiry must be undertaken "in light of the specific context of the case, not as a broad general proposition." Id. See also Ashcroft v. Al-Kidd, 131 S.Ct. 2074, 2084 (2011); Crowell at 594.  Further, only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is "clearly established." Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004); Crowell at 594. Moreover, even if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context.  Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007). Crowell at 594.  With respect to the appropriate sequence for this inquiry, the Supreme Court has clarified that the sequence for this inquiry is not mandatory.  Pearson v. Callahan, 555 U.S. 223, 12 S.Ct. 808, 818 (2009).

The Supreme Court has made clear that even officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection from the sometimes "hazy border between excessive and acceptable force." Saucier

v. Katz, 533 U.S. 194, 206 (2001).[16]   The Fourth Amendment requires a police officer to use objectively reasonable force when effectuating an arrest.  See Graham v. Connor, 490 U.S. 386, 388 (1989).  The reasonableness inquiry, an objective one, is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.  However, the objective reasonableness component of an officer's conduct under the Fourth Amendment is different than the reasonable component of the inquiry as to qualified immunity.  Oliveira v. Mayer, 23 F.3d 642, 648 (2d. Cir. 1994).  In other words, an officer can be granted qualified immunity when he reasonably, albeit mistakenly, believes that a reasonably prudent police officer would have acted as he did, even though a reasonably prudent police officer would in fact not have acted in the same manner.  Id.

Furthermore, New York's good faith immunity doctrine parallels federal qualified immunity jurisprudence for assault and battery claims.  Gilliard v. City of New York, 10 CV 5187 (NGG), 2013 U.S. Dist. LEXIS 18180, at *38 n11 (E.D.N.Y. Feb. 7, 2013).[17]

2.   *Application of the two tests for qualified immunity*

a.   Officer McAvoy's conduct did not violate a constitutional right

The first part of the qualified immunity analysis focuses on whether the officer's conduct violated a constitutional right.  In this case the jury found that the punching of a suspect who was struggling during the course of a lawful arrest was unconstitutional.  First and foremost, this finding was incorrect.  The use of a punch, under the specific circumstances that the jury found,

---

[16] See Oliveira v. Mayer, 23 F.3d 642 (2d. Cir. 1994)("Qualified immunity is a difficult concept; it looks to the reasonableness of an officer's belief that he acted lawfully after the officer has been found to have been unreasonable in his conduct.")

[17] See also Gomez v. City of New York, 05 Civ. 2147 (GBD)(JCF), 2008 U.S. Dist. LEXIS 41455, at *35 (S.D.N.Y. May 28, 2008) ("New York has treated the actions of police officers similar to the way they are treated under federal law: immunity will shield the officers and their employer from liability as long as the conduct was reasonable"), *adopted by*, 2008 U.S. Dist. LEXIS 63012 (Aug. 14, 2008).

is reasonable and constitutional as a matter of law.  See Tracy v. Freshwater, 623 F.3d. 90, (2d

Cir. 2010); Crowell v. Kirkpatrick, 400 Fed. Appx. 592 (2d Cir. 2010), discussed *infra*.

Second, the jury's finding that Officer McAvoy violated plaintiff's constitutional right to be free

from excessive force is inconsistent with its answers to special interrogatory number three.

Defendant submits that the Court must set aside the verdict pursuant to rules 50 and 59 as Officer

McAvoy, based upon the facts decided by the jury, was not liable for excessive force as a matter

of law, irrespective of any qualified immunity analysis.[18]

> **b. It was not clearly established that a police officer cannot punch an individual that is struggling with the officer during the course of a lawful arrest.**

Assuming that the Court finds that the force used by Officer McAvoy was not reasonable

as a matter of law or sustains the jury's finding on this point, the Court must then look to the test

for qualified immunity; specifically, whether the law was clearly established that it is

unconstitutional for an officer to punch a suspect during the course of a struggle, while making a

lawful arrest. Crowell v. Kirkpatrick, 400 Fed. Appx. 592, 594 (2d Cir. 2010).

The Second Circuit has instructed that this qualified immunity analysis regarding whether

the law was clearly established must itself be divided into two distinct and separate analyses:

First, was the constitutional right that was violated clearly established in light of the specific

context of the case by either Supreme Court or Second Circuit precedent; and second, even if the

right at issue was clearly established, an officer is still entitled to qualified immunity if officers

of reasonable competence could disagree on the legality of the action at issue in its particular

factual context. Crowell v. Kirkpatrick, 400 Fed. Appx. 592, 594 (2d Cir. 2010); Walczyk v. Rio,

---

[18] At the close of plaintiff's case, other than once again asserting the defense of qualified immunity, defendant did not make a motion for judgment as a matter of law on excessive force because there were clear factual disputes between the parties that needed to be resolved by the jury.  However, in light of the factual findings by the jury, defendants now believe that judgment as a matter of law in favor of Defendant McAvoy is appropriate.

496 F.3d 139, 154 (2d Cir. 2007).   If either one of these two analyses are answered in favor of the officer, he is entitled to the defense of qualified immunity.   Crowell at 594.

       1.   *The First Test:  It was not clearly established that McAvoy's conduct was unconstitutional.*

There is no Second Circuit or Supreme Court case that has held that a police officer is not allowed to punch a plaintiff who is struggling with the officer during the course of a lawful arrest.  In fact, the exact opposite is true.  All of the case law from the Second Circuit indicates that such conduct would be reasonable and constitutional.

The most instructive Second Circuit case on the issue is the recent decision in Tracy v. Freshwater, 623 F.3d. 90, (2d Cir. 2010).  In Tracy, the Second Circuit affirmed the district court's dismissal of an excessive force claim on summary judgment grounds when Defendant Police Officer Freshwater struck the plaintiff multiple times with his metal flashlight.  In that case the plaintiff's version of events, which was accepted as true, was as follows:  The defendant officer ordered plaintiff to place his hands on his head and turn around so that he could be patted down.  Id. at 93.  As plaintiff was complying with this order, he slipped on the ice and tried to grab his car to prevent himself from falling, at which point the officer struck him twice with a metal flashlight.  Id.  Plaintiff, after being hit with the flashlight, then ran in the direction of the officer's patrol car, when the officer grabbed him and the two of them struggled (emphasis added).  Id.  Plaintiff did not attempt to strike the officer, but again the officer struck him twice more with the metal flashlight.  Id.

The Second Circuit dismissed the plaintiff's excessive force claim with respect to this use of force, not on qualified immunity, but because the alleged conduct failed as a matter of law to allege a constitutional violation.  Id. at 97.  The Circuit held that the Officer Freshwater's use of force – which was far greater than the use of force at issue here and actually involved striking

- 15 -

someone multiple times with a metal object - was reasonable.  The Circuit analyzed the factors

outline by the Supreme Court in Graham v. Connor and held that from the officer's perspective,

his response was reasonable.  (emphasis added).  Id.  Additionally, the Circuit noted that the

incident was "a close-quarters, hand-to-hand struggle at night and in bad weather, which further

supports the reasonableness of Freshwater's view of the events."  Id.  The Circuit further stated

that it did not matter whether plaintiff had actually slipped on the ice; all that mattered was what

the perspective would have been of a reasonable officer at the scene.  Id.  Finally, the court noted

that the injuries described by plaintiff were minimal and bolstered the conclusion that the force

was reasonable.  Id.

Similarly, in Crowell v. Kirkpatrick, the Second Circuit held that the use of tasers on

plaintiffs that had chained themselves to a several hundred pound barrel drum was not a violation

of plaintiffs' Fourth Amendment rights and, additionally, that the defendants were entitled to

qualified immunity.  Crowell v. Kirkpatrick, 400 Fed. Appx. 592, (2d Cir. 2010).  In so holding

the Circuit stated:

> "Plaintiffs were arrested for relatively minor crimes of trespass and resisting
> arrest and were not threatening the safety of any other person with their behavior.
> However, they were actively resisting their arrest at the time they were tased by
> the officers in this case, having chained themselves to a several hundred pound
> barrel drum and having refused to free themselves, even though they admitted
> they were able to release themselves from the barrel at any time throughout the
> encounter."  Id. at 594.

The facts here, as determined by the jury, are strikingly similar to those in Tracy.  In fact,

the use of force by Officer McAvoy was much less than that of the officers in Tracy and

Crowell.  Officer McAvoy was engaged in a close quarters, hand-to-hand struggle, at night,

when he punched plaintiff.  From Officer McAvoy's perspective, which is the only appropriate

way to analyze the situation, it was reasonable to believe plaintiff posed a threat to his safety

- 16 -

when plaintiff approached to within a foot of Officer McAvoy with a clenched fist, while another individual, Amanda O'Hara, was inches from his face, yelling and using profanity.[19] Furthermore, when plaintiff struggled with Officer McAvoy during the course of a lawful arrest, as is now undisputed based upon the jury's verdict, it was reasonable for McAvoy to conclude that plaintiff was actively resisting arrest and still posing a threat to his safety.[20]   Punching a suspect in the course of lawful arrest when the suspect was struggling was a reasonable response. Finally, the injuries to plaintiff, which consisted of a bruise to the eye and supposed bruise to the stomach and bump to the head, were minimal.[21]

The law in the Second Circuit has not clearly established that Officer McAvoy's conduct was unlawful; therefore he is entitled to qualified immunity for that reason alone.  However, in actuality, the law in the Second Circuit is clearly established on the legality of the force used by Officer McAvoy under the circumstances he faced – it is clearly established that Officer McAvoy's use of force, was in fact lawful, reasonable, and constitutional.

   2.   *The Second Test:  Officers of reasonable competence could disagree on the legality of Officer McAvoy's actions.*

The lack of a Second Circuit or Supreme Court case stating that punching a struggling suspect, during the course of a lawful arrest, is unconstitutional, ends the inquiry; Officer

---

[19] Again, it is completely irrelevant that the jury found that plaintiff did not approach McAvoy at a fast pace with clenched fists and came face-to-face with him at a very close distance.  All that matters is whether Officer McAvoy's perception of what plaintiff was doing was reasonable.  See  Graham v. Connor, 490 U.S. 386, 388, (1989).  Cleary the jury thought it was, and found probable cause.  Furthermore, plaintiff admitted to approaching within a foot of McAvoy with a clenched fist.

[20] Indeed the resistance by plaintiff in this case is much greater than the plaintiff's resistance in Tracy.  In Tracy, the court assumed that the officer was mistaken about Tracy's resistance, and that Tracy had slipped on the ice.  The Circuit held that repeatedly striking plaintiff with a metal flashlight, even if it were accepted that Tracy slipped on the ice, was reasonable because from an officer's perspective, slipping on the ice could resemble resisting.  Here, it is an undisputed fact that plaintiff was struggling with Officer McAvoy.  Officer McAvoy did not mistakenly believe plaintiff was struggling and use force, which still would have been acceptable.  Rather, as the jury found, plaintiff was without question actually struggling with Officer McAvoy during the course of a lawful arrest.

[21] Plaintiff does not know how he received the bruise to his stomach.  (P. 516, ll. 15-18).

McAvoy is entitled to qualified immunity.  However, even if the law was clearly established in certain respects against the conduct of Officer McAvoy, he would still be entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context.   Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007). Crowell at 594.

Based upon the number of Second Circuit and lower court cases that allow for the use of force on a struggling or resisting suspect, it is clear reasonable officers could disagree on the appropriateness of the force used by Officer McAvoy. See Rivera v. Federlin, 08 Civ. 7293 (PAC)(KNF), 2011 U.S. Dist. LEXIS 138553 * 7, (S.D.N.Y. December 2, 2011) ("Officer Federlein's "decision to use his [fist] to protect himself and subdue an arrestee he perceived to be actively resisting was therefore a reasonable response.").  See also U.S. ex rel. Thompson v. Village of Spring Valley, N.Y., 05 Civ. 2005 (LAP), 2006 U.S. Dist. LEXIS 46356, (S.D.N.Y. July 10, 2006) (finding that it was objectively reasonable for police officer to use a Taser to subdue suspect who was resisting arrest).  See also Husbands ex rel. Forde v. City of New York, 335 Fed. Appx. 124, 128 (2d Cir. 2009) ("We disagree with Husbands' assertion that Officer Livingston's punch to Forde's torso constituted excessive force. This punch is insufficient as a matter of law to support a finding of force beyond what was necessary to subdue Forde and apply handcuffs…Forde was doing something with his hands that made it difficult to handcuff him, because it is undisputed that Livingston punched Darryl Forde one time in the side to try and get Darryl Forde to release his hands to be hand-cuffed.)[22]

---

[22] See Williams v. City of New York, No. 05 Civ. 100230, 2007 U.S. Dist LEXIS 55654, (S.D.N.Y. July 26, 2007). (Plaintiff shoved one of the officers and tried to flee the area. The other officer tried to subdue and arrest plaintiff, who continued to resist. That officer then sprayed O.C. spray at defendant's eyes. Plaintiff stuck his hands into the crotch area of his pants, so the officers forcibly removed them and placed plaintiff in handcuffs. The court granted summary judgment dismissing plaintiff's excessive force claim, noting that Plaintiff alleged only de minimus injuries (i.e. bruising, scrapes, and the effects of the O.C. spray)). Id. at *46-47.

Obviously, based upon the aforementioned case law, reasonable officers could certainly disagree as to the appropriateness of punching a suspect during the course of a struggle, while attempting to make a lawful arrest.  Frankly, defendant submits that most reasonable officers would agree that this conduct is reasonable, as would most judges, as evidenced by the aforementioned decisions.  Even the Court's charge to the jury on this case makes it clear that such conduct would be appropriate.[23]  Perhaps most instructively, plaintiff's counsel seemed to acknowledge that reasonable officers could certainly disagree as to the appropriateness of punching a suspect during a struggle when he stated to the Court, "if there was a struggle when he (McAvoy) punched plaintiff, I think that would definitely help the court decide qualified immunity."  (P. 377, ll. 11 - 12)

3.   *Justice mandates that Officer McAvoy be granted qualified immunity.*

Officer McAvoy was faced with the following undisputed facts:  In front of a bar at approximately 1:30am, while engaged in an argument with another person who was two inches from his face and yelling profanity at him, he was approached by a man with a clenched fist who got to within a foot of him.  When Officer McAvoy attempted to lawfully place the man under arrest, the man struggled with him.  Officer McAvoy punched the man during the course of the struggle, and then handcuffed him.  He did not punch him after handcuffs were put on the individual.  The punch caused no stitches, broken bones, loss of consciousness, trip to the hospital, or any other significant physical impairment – only bruising and swelling.

Defendant simply asks the Court, what was Officer McAvoy supposed to do in this situation?  Was he supposed to know with certainty, in the split-second he had to make a

---

[23] The Court instructed the jury, "Not every push, shove, or even a blow to the face by a police officer, even if it may later seem unnecessary in the peace and quiet of a courtroom, constitutes excessive force."  (Jury Instructions, Page 8).

decision, that a punch was an unreasonable use of force against someone with whom he was struggling to lawfully arrest at 1:20 am, after that person had just approached within a foot of the officer with a clenched fist?  Was he supposed to have instantaneously been able to make this determination about the unreasonableness of a punch under these circumstances, despite the fact that the Second Circuit and numerous district courts in the circuit have stated such use of force is reasonable?  Was he supposed to wait until the person that was struggling with him, during the course of a lawful arrest, decided to throw the first punch, before he decided to take action and throw a punch?  The answer to each of these questions is obviously no.  Therefore, justice in this case mandates that Officer McAvoy be granted qualified immunity.

If Officer McAvoy is not entitled to qualified immunity under these circumstances, then it logically follows that any officer can be found liable for excessive force every time a suspect that is lawfully being arrested decides to struggle and ends up with a bruise because the officer had to use force to combat the struggle.  Such a standard would be unworkable for officers who are often making arrests under tense and rapidly evolving situations.  It would also be dangerous for officers, as they would be hesitant to use what may very well be appropriate force because they fear being sued.  Furthermore, it would give arrestees an incentive to struggle with an officer during the course of their lawful arrest.

The conduct by Officer McAvoy, as found by the jury, is exactly the reason that the doctrine of qualified immunity exists in excessive force cases.  Even officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection from the sometimes hazy border between excessive and acceptable force. Saucier v. Katz, 533 U.S. 194, 206 (2001).    As the Supreme Court has noted time and again, "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all

but the plainly incompetent or those who knowingly violate the law.'"   Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).[24]   See Also Lennon v. Miller, 66 F.3d. 416, 424 (2d Cir. 1995) ("qualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances.").   See also Pinter v. City of New York, 448 Fed. Appx. 99, 105 (2d Cir. 2011) ("qualified immunity analysis is not an inquiry into best practices or a reconstruction of events viewed in hindsight; the legal standard is much more generous to law enforcement officers.")

At its very worst, Officer McAvoy's decision to punch plaintiff, while struggling with him during a lawful arrest, was a mistaken judgment in a tense and evolving circumstance, and not done by someone who was plainly incompetent in knowing violation of the law.[25]   In fact, the law of the Second Circuit says that he could have struck plaintiff multiple times with a metal flashlight.   It was certainly not unreasonable for him to conclude that punch would also be a reasonable use of force.   He must be afforded the defense of qualified immunity; justice requires it.

## II.   IF THE COURT DECLINES TO GRANT QUALIFIED IMMUNITY, THE VERDICT SHOULD BE SET ASIDE AND A NEW TRIAL ORDERED

If the Court does not set aside the verdict as a matter of law or grant qualified immunity, defendant McAvoy submits that a new trial must be ordered, pursuant to Federal Rule of Civil Procedure 59.

---

[24] The Second Circuit recently explained that "qualified immunity thus affords government officials breathing room to make reasonable—even if sometimes mistaken—decisions, and protects all but the plainly incompetent or those who knowingly violate the law from liability for damages."   DiStiso v. Cook, 691 F.3d 226, 240 (2d. Cir. 2012).

[25] Again, defendant stresses that such use of force was not improper at all, but appropriate.

a.  Letters produced by former plaintiff Amanda O'Hara should have been admitted into evidence.

Plaintiff's mother, Amanda O'Hara, was a former plaintiff in this lawsuit who passed away.  As a result her case was dismissed.  While Ms. O'Hara was still alive she attempted to strengthen her lawsuit by providing her attorney with a letter from City Councilwoman Deborah Rose's Office, attesting to Ms. O'Hara's good work in the community.  Plaintiff's counsel then listed this letter as one of his potential exhibits on the joint pre-trial order and provided it to defense counsel.  (P. 609)

Defense Counsel's position was that the letter was forged, as Councilwoman Rose's office informed defense counsel that her office never wrote any such letter.  Additionally, defendant maintains that the letter submitted by Ms. O'Hara, and purported to be from Councilwoman's Rose's office, was so poorly written that it was an obvious forgery on its face.  Plaintiff's counsel maintained that he strongly doubted that the letter was fraudulent, yet would not consent to allowing the letter to be put into evidence.  (P. 610, l. 3).

During the trial, plaintiff read deposition testimony from Amanda O'Hara to the jury, putting her veracity directly at issue.  Furthermore, during cross-examination of plaintiff, he first denied that his mother, Amanda O'Hara, had made changes to his prior sworn testimony after his 50-H hearing.  (P. 525, ll. 15-17).  When asked a second time whether his mother had made some changes to his prior testimony, plaintiff again said that she had not.  (P. 544, ll. 5-8).  However, when asked a third time, after being confronted with different forms of handwriting on the errata sheets, plaintiff finally admitted that his mother had wrote some of the reasons for the changes to his testimony.  (P. 545, ll. 22-24).  This admission by plaintiff on cross-examination made it even more relevant for the jury to examine Amanda O'Hara's credibility, as it was now

apparent that Ms. O'Hara had not only given her own testimony about what she allegedly witnessed, but was influencing plaintiff's testimony.

As plaintiff's counsel correctly stated "everybody's credibility in this case is on the line." (P. 618). Defense counsel sought to introduce the aforementioned letter that was listed on plaintiff's joint pre-trial order into evidence to challenge Ms. O'Hara's credibility. The Court refused to allow the letter - which was plaintiff's letter, was listed by plaintiff on the JPTO, and which plaintiff's counsel believed to be authentic - to be put into evidence. However, the Court did consider granting a mistrial on the issue. The parties agreed to allow the trial to continue, but defendant McAvoy expressly reserved his right to object to the Court's ruling on appeal.

Later, on his rebuttal summation Plaintiff's counsel, attacked defense counsel's for questioning the credibility of Amanda O'Hara. Specifically, he accused defense counsel of attacking the plaintiff's entire family and stated, "That's the game. It's come in here an put things in front of you. Attack, attack. It's all personal too. Paul's a liar. His mother, Amanda, who you heard from the judge is medically and physically impossible for her to be here now to defend herself. But they go on the attack. She's a liar. His sister Madison, now, she's a liar, too. The whole family is lying." (P. 741, ll. 16-22).

Such comments by plaintiff's counsel were patently unfair, considering defense counsel was precluded from offering into evidence a letter, produced by plaintiff, which would have severely called into question Amanda O'Hara's credibility. Defendant once again asserts that it was error to not allow this letter into evidence and believe this error warrants a new trial pursuant to Rule 59.

b. Plaintiff counsel's remarks on his rebuttal summation were improper and are further reason to order a new trial.

In addition to the aforementioned improper comments regarding Amanda O'Hara, plaintiff's counsel also stated at the end of his rebuttal summation the following:

> "If you let these defendants out of here. Walk off that door without ever being held accountable, that would be a tragedy of justice. That would be absolutely terribly wrong and a mistake. And ask you not to do that. For three years, they have been bobbing and weaving, shifting blame. Denying responsibility. Pointing their fingers at other people. At long last, it's judgment day today, at long last. Hold them accountable for what they did. If you don't, know one will. They'll get away with this scot free forever." (P. 743, l. 19; 744, line 4.)

These remarks were improper, highly inflammatory and prejudicial to defendants. Additionally, the timing of these remarks, which were done at the very end of plaintiff's summation and was the last thing the jurors heard from either attorney, served to amplify their prejudicial effect.[26]  Defendants immediately objected to these remarks and the Court sustained the objection.  However, once these remarks were stated, the jury cannot simply forget them. The only proper remedy would be a new trial.

## CONCLUSION

For the foregoing reasons, defendant Michael McAvoy respectfully requests that he be granted qualified immunity and the claims of excessive force and battery be dismissed with prejudice.  Alternatively, pursuant to rule 50 and 59, defendants McAvoy asks for judgment as a matter of law or a new trial for all of the reasons stated above.

---

[26] These were not the only improper remarks on plaintiff's rebuttal summation.  Counsel referring to defendants, and presumably defense counsel, stated, "Let me tell you something folks, I'll tell you right now.  These people wouldn't know the truth if it hit them over the head." (P. 741, l. 12).  Such a remark is obviously improper and inflammatory, but is even more improper in light of the facts of circumstances of this case, where the allegation was that plaintiff was repeatedly hit in the head.

Dated:      New York, New York
            July 8, 2013

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the City of New York
                              *Attorney for Defendant Police Officer Michael*
                              *McAvoy*
                              100 Church Street
                              New York, New York 10007


                    By:    /s/
                           Andrew Wenzel
                           Assistant Corporation Counsel
                           Special Federal Litigation Division