UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Paul O'Hara,

                                      Plaintiff,         **MEMORANDUM
                                                                              RULING AND ORDER**
                                                                                   11-3990 (TLM)

      -against-

Michael McAvoy, Michael Malone,

                                      Defendants
-------------------------------------------------------------X

## Ruling on Defendant's Rule 50 and 59 Motions

     Before the Court is defendant Michael McAvoy's Motion for Judgment as a Matter of Law [Rec. Doc. 88] and plaintiff Paul O'Hara's reply in opposition thereto [Rec. Doc. 89]. For the reasons that follow, defendant's motion will be denied.

     Plaintiff brought claims against defendant McAvoy pursuant to 42 U.S.C. § 1983 for false arrest and excessive force and pursuant to New York state law for assault and battery. On June 28, 2013, after a four-day jury trial, the jury found for plaintiff on his excessive force and battery claims against defendant McAvoy. [Rec. Doc. 84]. The jury awarded damages in the sum of $10,000 on plaintiff's excessive force claim and in the sum of $40,000 on plaintiff's battery claim, for a total award of $50,000. *Id.* McAvoy's motion contends that he is entitled to qualified immunity, or that, in the alternative, a new trial should be granted.

    I.     Defendant's Rule 50 Motion

        A. Excessive Force

     The first section in defendant's filing, although titled a "motion to dismiss," is more properly construed as a Rule 50 motion for judgment as a matter of law. In his brief, defendant

1

moves for judgment on the excessive force claim because he contends that (1) as a matter of law, defendant did not violate plaintiff's constitutional rights and (2) as a matter of law, defendant is entitled to qualified immunity. Plaintiff alleges in his objection that defendant failed to move for judgment as a matter of law on the excessive force claim.[1] After reviewing the trial transcript, the Court is satisfied that defendant moved for judgment as a matter of law on the issue of qualified immunity for all claims before the jury, including excessive force. Tr. 800:10-11 ("We[, the defendants,] want to reserve the right to move for qualified immunity."). However, defendant did not move for judgment as matter of law on the basis that defendant did not violate plaintiff's right to be free from excessive force. Tr. 787:23-788:2. Had the defendant moved for judgment as a matter of law on plaintiff's excessive force claim, the Court would have declined to set aside the jury's excessive force finding based on the record before the jury when plaintiff rested his case in chief.

    B. Qualified Immunity

        i. Rule 50 Standard

In consideration of a motion for judgment as a matter of law, the court is required to draw all reasonable inferences in favor of the nonmoving party. *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007). At the same time, the court may not find as a fact any proposition that is contrary to the jury's findings. *Id.* Finally, the court may not "make findings on factual questions not submitted to the jury where those findings take the evidence in the light most favorable to the moving party, rather than the opposing party." *Id.*

---

[1] After receiving plaintiff's objection, defendant submitted a letter to the Court dated July 25, 2013 arguing that he did not waive his Rule 50 motion. [Rec. Doc. 91]. Plaintiff then responded that same day. [Rec. Doc. 92]. Although fashioned as letters, these submittals are essentially reply briefs. The Court instructed the parties at the July 8, 2013 teleconference that it would only accept reply briefs if requested. The Court has not taken these letters into consideration in ruling on this matter. The Court also notes that this is the second time in this case that the New York City Law Department has sent the Court letters in direct contravention of its previous orders.

ii. Defendant's Rule 50 Motion for Qualified Immunity

Defendant asserts that he is entitled to qualified immunity on plaintiff's excessive force claim as a matter of law. Police officers are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis is a two-step process. First, a court must determine whether plaintiff has shown a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Then, the court must determine whether the right was "clearly established" at the time of the violation. *Id.* To determine whether a right is clearly established, the Second Circuit looks to "whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345-46 (2d Cir. 2011) *cert. denied*, 132 S. Ct. 499 (2011). "If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). In excessive force cases, the Fourth Amendment analysis and the qualified immunity analysis often "converge on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful." *Cowan v. Breen,* 352 F.3d 756, 764 n.7 (2d Cir. 2003) (citation omitted).

Qualified immunity is an affirmative defense. *Lee v. Sandberg*, 136 F.3d 94, 101 (2d Cir. 1997). "The burden rests on the defendants to raise the defense in their answer and to establish the defense on a motion for summary judgment or at trial." *Id.*

The first element of the qualified immunity test, whether plaintiff has shown the violation of a constitutional right, was established by the jury based on the evidence adduced at trial,

3

including its credibility determinations, using the jury instructions given by the Court. Thus, only the second prong of the qualified immunity analysis remains.

It was clearly established at the time of the incident that "the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier*, 533 U.S. at 201-02 (citing *Graham v. Connor*, 490 U.S. 386 (1989)); *see also Lennon v. Miller*, 66 F.3d 416, 422 (2d Cir. 1995) (finding that the right to be free from excessive force is clearly established). However, the analysis of whether the right in question is clearly established must be particularized: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Doninger*, 642 F.3d at 345-46. It need not be so particularized that "the very action in question has previously been held unlawful," but "in the light of pre-existing law the unlawfulness must be apparent." *Id.* When analyzing whether the force used was objectively reasonable under the Fourth Amendment, the court must consider (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Saucier*, 533 U.S. at 208 (quoting *Graham*, 490 U.S. at 396). However, it is also clearly established that officers effectuating an arrest may not use more force than reasonable under the circumstances. *See, e.g.*, *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004); *Lemmo v. McKoy*, 2011 WL 843974, at *6 (E.D.N.Y. Mar. 8, 2011)

(noting that "gratuitous uses of force that are not required to subdue an individual likely fail the *Graham* objective unreasonableness test").

After returning a verdict on liability finding that plaintiff had proven his excessive force claim, the jury was presented with a special verdict form that posed three factual questions for the jury to answer so that the Court could later "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003); *see* [Rec. Doc. 84]. In response to those questions, the jury found that plaintiff did not "chest-bump" defendant McAvoy and that plaintiff did not approach defendant McAvoy "at a fast pace with clenched fists"[2] and come "face-to-face with him at a very close distance." [Rec. Doc. 84][3] The jury also found that "plaintiff was struggling with defendant McAvoy when defendant McAvoy punched plaintiff."[4] [Rec. Doc. 84]. Considering the evidence in the light most favorable to plaintiff and consistently with the jury's answers to the three special interrogatories and their verdict finding that plaintiff proved by a preponderance of the evidence that defendant McAvoy used excessive force and committed battery on plaintiff, the Court analyzed defendant's motion from the perspective that McAvoy punched plaintiff multiple times. First, defendant McAvoy punched plaintiff in the face while plaintiff was standing. Tr. 295:18-19. Plaintiff then fell to the ground, Tr. 296:15-17, where defendant McAvoy punched him at least four times while plaintiff attempted to shield his body from McAvoy's blows. Tr. 298:14-299:14.

---

[2] Defendant asserts that he is entitled to qualified immunity because plaintiff admitted that one of his hands was holding his cell phone and that he interpreted that action as plaintiff approaching aggressively with clenched fists. Def. Mem. at 4 n.2. However, a claim of reasonable mistake goes "to the question of whether the plaintiff's constitutional rights were violated, not the question of whether the officer was entitled to qualified immunity." *Stephenson*, 332 F.3d at 78 (citing *Saucier*, 533 U.S. at 205, 206). The jury determined that plaintiff's constitutional rights were violated, and defendant's mistake of fact is not relevant at this stage of the analysis.

[3] Defendant McAvoy testified that plaintiff marched up to him with clenched fists and came very close to his face. Tr. 89:13; 94:4; 105:11-12; 134:20-22. Defendant McAvoy wrote in his arrest report that plaintiff chest-bumped him, but at the time of trial could not remember whether that occurred. Tr. 103:5-14. It is clear that the jury did not believe defendant's testimony as to those aspects of plaintiff's approach or defendant's written reports of a chest-bump.

[4] It was undisputed that defendant punched plaintiff once in the face.

Considering the facts from the perspective that it must, the Court concludes that defendant is not entitled to qualified immunity. The jury's responses to the special interrogatories foreclose the possibility that, in the circumstances facing defendant in the light most favorable to maintaining the jury verdict and in favor of plaintiff, a reasonable officer would have believed the use of force was reasonable. The jury answered no to all factual questions that described plaintiff's approach to defendant McAvoy as aggressive. Accordingly, defendant McAvoy was dealing with a calm seventeen-year old. While the jury did find that plaintiff was struggling when McAvoy punched him, again viewing the facts in the light most favorable to plaintiff, the Court finds that reasonable officers could not disagree whether punching plaintiff multiple times was objectively reasonable when plaintiff had not previously been aggressive, was being arrested for a minor crime, and was not known or suspected to be armed or a fugitive. There is no evidence before the Court that multiple punches were a reasonable means through which to subdue plaintiff's struggling. The Court also notes that defendant's brief fails to advance any argument under which defendant would be entitled to qualified immunity under the factual scenario the Court is required to accept. Defendant McAvoy is not entitled to qualified immunity on plaintiff's excessive force claim.

Defendant contends, based on the jury's responses to the special interrogatories, that the jury determined that defendant McAvoy punched plaintiff only once while plaintiff resisted arrest. Def. Mem. at 8. However, the number of times McAvoy actually punched plaintiff and whether plaintiff's "struggle" was merely an attempt to shield his body from defendant's punches or was an active attempt to resist arrest were not factual issues decided by the jury. As qualified immunity is an affirmative defense, "[t]o the extent that a particular finding of fact is essential to a determination by the court that the defendant is entitled to qualified immunity, it is

6

the responsibility of the defendant to request that the jury be asked the pertinent question."
*Zellner*, 494 F.3d at 368. The process of drafting the special interrogatories on qualified immunity in this matter was lengthy and at times torturous. Defendant had many opportunities to suggest his own additional interrogatories but failed to do so. The parties were first instructed on June 19, 2013 to submit special interrogatories by June 21, 2013 [Rec. Doc. 69]. The interrogatories were discussed, and the parties were given the opportunity to make suggestions, at the end of the first day of trial on June 25, 2013, Tr. 14:25-16:4, and at the beginning of the second day of trial on June 26, 2013, Tr. 371:13-378:5 (discussion of the wording of questions); 595:22-596:3 (defense counsel asserts that they will not have any objections to the qualified immunity verdict form when it is given to the jury). At no time prior to submitting the special interrogatories on qualified immunity to the jury did defendant request that the Court include any questions regarding how many times plaintiff was punched or whether plaintiff was resisting arrest. After the jury was released, however, the defendant requested additional interrogatories be given to the jury, including a question regarding how many times defendant McAvoy punched plaintiff. Tr. 834:22-835:21. As the jury had been released, the Court did not submit any additional questions to it. Tr. 836:22-837:3. Given the factual findings made by the jury and the current procedural posture of the motion, the Court is not entitled to make those factual findings, and must assume that, making inferences in favor of the opposing party, that plaintiff was punched multiple times while shielding himself from those punches.

II. Rule 59 Motion

Defendant McAvoy requests that, in the alternative, the Court order a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Under Rule 59(a), the Court may "grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in

an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "[F]or a district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous verdict," that the "verdict is a miscarriage of justice," *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003) (internal citations and quotation marks omitted), or that "errors [were] likely to have had a substantial effect on the jury's resolution of the factual disputes at trial," *Nimely v. City of N.Y.*, 414 F.3d 381, 392 (2d Cir. 2005).

Defendant McAvoy bases his motion for a new trial on two grounds: first, that letters allegedly forged by plaintiff's deceased mother Amanda O'Hara should have been admitted into evidence at trial, and second, that statements made by plaintiff's counsel in his closing argument were improper.

A. Evidentiary Ruling on Allegedly Forged Letters

Defendant McAvoy contends that the Court erred by refusing to allow into evidence letters from New York City Council Member Deborah Rose and from the National "MS" Society allegedly forged by plaintiff's deceased mother, Amanda O'Hara. These letters were not included in defendant's bench book[5] and defendant's will call witness list included no witnesses through which the letters could be introduced. Defendant argues, essentially, that the letters should have been admitted into evidence because they were relevant to Amanda O'Hara's character for truthfulness, which was put at issue through the reading of portions of her deposition testimony. Def. Mem. at 22. While relevant evidence is generally admissible, Fed. R. Evid. 402, the letters, even if relevant, could not have been properly admitted into evidence before they satisfied additional evidentiary hurdles. Defendant's brief fails to move beyond the issue of relevance to demonstrate the full procedure through which the letters could have

---

[5] The Court's Jury Trial Procedure Order published two weeks prior to the commencement of trial stated that "[a]ny exhibit not contained within the bench book will be deemed not to have been exchanged and will not be admitted into evidence at trial." [Rec. Doc. 61].

8

admitted into evidence, a concern raised by the Court at trial, *see* Tr. 13:20-14:5. Defendant does not provide an exception to the hearsay rule, nor does he explain how the letters could have been authenticated. Defendant has not identified any reason that the Court's prior ruling merits reconsideration. Defendant has not met his burden of showing substantial errors were made in the exclusion of evidence so as to cause an unfair trial.

Even if the letters were excluded in error, it would not be a ground for granting a new trial unless it affected defendant's "substantial rights." Fed. R. Civ. P. 61. In order to warrant a new trial, the exclusion of the evidence must be "so clearly prejudicial to the outcome of the trial that [the Court is] convinced that the jury . . . reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Nimely*, 414 F.3d at 399. Defendant asserts that because portions of Amanda O'Hara's deposition testimony were read into evidence and because plaintiff testified that Amanda O'Hara, and not the plaintiff, had written some of the reasons for corrections to plaintiff's deposition testimony, he was prejudiced by the exclusion of the allegedly fabricated letters which would have impeached Amanda O'Hara's credibility. However, Amanda O'Hara's credibility was called into question at trial in other ways, including through the live testimony of her daughter Madison O'Hara. Tr. 673:9-674:14. Additionally, while Amanda O'Hara was a participant in the events that gave rise to this lawsuit,[6] her deposition testimony that was read during the trial was brief, Tr. 576:18-581:8; 583:4-19; 584:10-21; 585:3-587:15, totaling less than ten pages of a 175-page deposition, and her credibility was not so central to the case as to render the jury's verdict "seriously erroneous." Defendant has made no showing that his "substantial rights" were affected. A new trial is not warranted on the basis of the excluded letters.

---

[6] At the time of trial, Amanda O'Hara was no longer alive and therefore was unavailable to testify. Her deposition testimony, taken before her demise, was read in lieu of live testimony.

9

B. Plaintiff's Counsel's Statements During Closing Argument

Next, defendant McAvoy asserts that a new trial is required based on improper comments made by plaintiff's counsel during his closing statement. Defendant asserts that the following statement was "improper, highly inflammatory, and prejudicial to defendants:"

> [I]f you let these defendants get out of here. Walk off that door without ever being held accountable, that would be a tragedy of justice. That would be absolutely terribly wrong and a mistake. And ask you not to do that. For three years, they have been bobbing and w[e]aving. Shifting blame. Denying responsibility. Pointing their fingers at other people. At long last, it's judgment day, at long last. Hold them accountable for what they did. If you don't, no one will. They'll get away with this [scot] free forever.

Tr. 743:19-744:4.

"Not every improper or poorly supported remark made in summation irreparably taints the proceedings; only if counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury, should a new trial be granted." *Marcic v. Reinauer Transp. Cos.,* 397 F.3d 120, 127 (2d Cir. 2005) (quoting *Matthews v. CTI Container Transport Int'l, Inc.*, 871 F.2d 270, 278 (2d Cir. 1989)). Thus, a court addressing a motion for a new trial based on trial counsel's misconduct "must consider such a claim in the context of the trial as a whole, examining, among other things, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, and the manner in which the parties and the court treated the comments." *Levitant v. City of N.Y. Human Res. Admin.*, 914 F. Supp. 2d 281, 311 (E.D.N.Y. 2012) (quoting *In re Fosamax Prods. Liab. Litig.,* 742 F. Supp. 2d 460, 477 (S.D.N.Y. 2010) (internal quotation marks omitted)). The court must consider the summation in its entirety, including any corrective measures taken by the trial court. *See, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 539 (1993) ("[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."); *United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries

follow limiting instructions"). "[W]here the jury's verdict finds substantial support in the evidence, counsel's improper statements will frequently be *de minimis* in the context of the entire trial." *Marcic*, 397 F.3d at 124. Only when "the conduct of counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict," should a new trial should be granted. *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992).

The Court has considered the totality of the circumstances surrounding the challenged remarks and finds that they do not warrant a new trial. The comments were objected to by defense counsel and remedied by a curative instruction to the jury. After sustaining defense counsel's objection, the Court instructed the jury to "[d]isregard the lawyer's last statement." Tr. 744:6-7. Given the evidence presented at trial which substantially supported the jury's verdict finding excessive force and battery, and, in light of the curative instructions given in response to plaintiff's counsel's improper comments, the Court concludes that defendant was not prejudiced nor was the integrity of the trial compromised by plaintiff's counsel's comments during his closing statement.

III. Conclusion

Accordingly, for the reasons set forth above, it is

**ORDERED** that defendant McAvoy's Motion for Judgment as a Matter of Law [Rec. Doc. 88] is **DENIED**.

**SO ORDERED**.

Tucker L. Melançon
United States District Judge

August 22, 2013
Brooklyn, NY